UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVIDCO INVESTORS, LLC
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.                                                                    Case No. 8:04-cv-2561-T-24 EAJ
                                                                                          **LEAD CASE**

ANCHOR GLASS CONTAINER
CORPORATION, ET AL.,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss Counts I and II of the Consolidated Second Amended Class Action Complaint. (Doc. No. 139). Plaintiffs oppose the motion. (Doc. No. 143).

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Id. at 47. All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will

ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II.  Background**

Shareholders that invested in Anchor Glass Container Corporation ("Anchor") began filing suit for alleged securities violations under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  The cases were consolidated, and the Court appointed Theodore Zeller, Matthew Bellefeuille, and Steamfitters Local 449 Pension & Retirement Security Funds ("Steamfitters") as lead plaintiffs.  (Doc. No. 22).  Thereafter, Plaintiffs filed an amended class action complaint.  (Doc. No. 28).

Defendants moved to dismiss the amended class action complaint.  After ruling on the various motions to dismiss, the only claims that remained were Zeller's Section 10(b) claim to the extent that it was based on the failure to write down the assets of the Connellsville plant prior to the closing of the plant and Zeller's Section 20(a) control person liability claim.  (Doc. No. 113).  Bellefeuille and Steamfitters' Section 11, Section 15, Section 10(b), and Section 20(a) claims were dismissed.  (Doc. No. 113).

Thereafter, Zeller filed a motion to amend the class action complaint to add shareholder Mary Wearstler as a named plaintiff on the Section 11 and Section 15 claims.  The Court granted the motion and stated that Wearstler's Section 11 claim could only be based on the following: (1) the failure to write down the value of the assets at the Connellsville plant prior to its closure; and (2) the failure to disclose a contingent loss due to the loss of the Rolling Rock contract. (Doc. No. 127).

Thereafter, Plaintiffs filed a second amended complaint. (Doc. No. 128). In the second amended complaint, Plaintiffs assert the following four claims: (1) Count I: Section 11 claim, (2) Count II: Control Person Liability under Section 15, (3) Count III: Section 10(b) claim, and (4) Count IV: Control Person Liability under Section 20(a). (Doc. No. 128).

In support of their Section 11 claim, Plaintiffs allege the following (Doc. No. 128): Anchor is a glass bottle maker. (¶ 2). On March 15, 2002, as part of Anchor's second bankruptcy, Anchor entered into a Reorganization Agreement with Cerberus Capital Management, L.P. ("Cerberus") that provided for Cerberus to invest $100 million into Anchor, of which $75 million was an investment in 100% of Anchor's series C participating preferred stock, and $5 million was an investment in nearly all of Anchor's common stock. (¶ 7, 45). On April 15, 2002, Anchor filed its proposed plan of reorganization. (¶ 8). The plan of reorganization transferred stock ownership in Anchor to Cerberus and its related entities. (¶ 8). When Cerberus invested in Anchor, it fully intended to take Anchor public and thereby recoup its investment and earn an immediate profit while continuing to control Anchor. (¶ 12).

On September 9, 2003, Anchor issued a prospectus in connection with the September 25, 2003 initial public offering ("the Offering"). (¶ 46). Plaintiffs allege that the prospectus misrepresented and omitted material facts. (¶ 33). Specifically, Plaintiffs contend that the financial statements incorporated into the prospectus were false and misleading because they (1) overstated the value of the assets of the Connellsville plant, and (2) failed to disclose the contingent liabilities, risks, and uncertainties that the loss of the Rolling Rock contract would cause. (¶ 34).

On August 8, 2002, the Latrobe Brewing Company ("Latrobe") informed Anchor that it

3

would not renew its long-term contract with Anchor. (¶ 13). Under its contract with Latrobe, Anchor had manufactured green glass bottles for Rolling Rock beer and spray painted Rolling Rock's distinctive white label directly onto the green glass bottles. (¶ 14). The Rolling Rock glass bottles were manufactured and labeled at Anchor's plant in Connellsville, Pennsylvania. (¶ 14). The Rolling Rock contract accounted for 50% of the Connellsville plant's production and sales. (¶ 15). Anchor had no other prospects to replace the Rolling Rock contract, and it never replaced the contract. (¶ 15).

Plaintiffs contend that the loss of the Rolling Rock contract was a triggering event under generally accepted accounting principles ("GAAP") that required Anchor to determine whether the value of the Connellsville plant and equipment was impaired. (¶ 16). Plaintiffs contend that the Connellsville plant was impaired when it lost the Rolling Rock contract because (1) the plant's extensive equipment used to spray paint the Rolling Rock bottles became an impaired asset, since the packaging and labeling was unique to Rolling Rock and not used by any other beer breweries; and (2) there were no alternative customers in proximity to the plant[1] that could replace the lost Rolling Rock business. (¶ 16).

Plaintiffs contend that announcing the impairment of one of Anchor's nine plants would have negatively affected Cerberus' plans to take Anchor public. (¶ 17). Therefore, when Anchor filed the prospectus, it failed to mention that the Connellsville plant and equipment were impaired. (¶ 19).

---

[1]Plaintiffs point out that in the prospectus, Anchor states: "Our manufacturing facilities are generally located in geographic proximity to our customers due to the significant cost of transportation and the importance of prompt delivery to customers. Most of our production is shipped by common carrier to customers within a 150-mile radius of the plant at which it was produced." (Doc. No. 28, p. 29-30, n.3)

However, on November 5, 2004, Anchor announced that it would close its Connellsville plant. (¶ 55). In connection with the closing, Anchor's financial statements for the quarter ending September 30, 2004 filed on November 12, 2004 with the SEC on Form 10-Q, disclosed:

> At a meeting held November 4, 2004, the Board decided to close the 624,000 square foot Connellsville, Pennsylvania facility. Production was terminated effective as of the close of business on November 4. The Company expects to complete plant closure activities within twelve months. Approximately 300 employees will be affected.
>
> \*       \*       \*
>
> The Company will record restructuring expenses and other related charges that will, in total, approximate $47 to $57 million. These charges include approximately $2 million for a company-wide reduction in force, in addition to Connellsville, as a result of management's evaluation of personnel costs. Of this total, $44 to $51 million will be recorded in the fourth quarter of 2004.

(¶ 55).

Of the $47 - $57 million in restructuring expenses, Anchor stated in the Form 10-Q that $25 million would consist of a noncash write down of property and equipment, and $4 to $10 million would consist of a noncash write down of inventories. (¶ 55). Plaintiffs contend that in violation of GAAP, Anchor improperly delayed the recognition of the impairment in the values of certain inventory, property, and equipment until it closed its Connellsville plant, causing Anchor's operating results to be materially overstated prior to the write-down. (¶ 56). Plaintiffs base this conclusion on their allegation that Rolling Rock beer bottle production represented 50% of the Connellsville plant's business and that after Anchor lost the Rolling Rock contract, operations at that plant declined dramatically. (¶ 63). Furthermore, Plaintiffs contend that when Anchor lost the Rolling Rock contract, the Connellsville plant had no prospect of returning to its previous level of profitability, because (1) the Rolling Rock contract occupied two of the plant's four glass making shops on a full-time basis during the term of the contract; and (2) there were

no potential customers in proximity to the Connellsville plant that could generate comparable volume requirements. (¶ 65). As such, Plaintiffs allege that these changes in circumstances indicate that the reported value of Anchor's Connellsville plant and equipment was impaired even before the Offering. (¶ 64).

Additionally, Plaintiffs contend that Anchor's financial statements, beginning at least with the six month period ending June 30, 2003 included in the prospectus, violated GAAP by failing to disclose Anchor's contingent liabilities regarding the loss of the Rolling Rock contract. (¶ 73). The prospectus disclosed that "In 2002, we lost a customer responsible for approximately 3.9% of our 2001 net sales." (¶ 70). The prospectus then stated that Anchor was "able to replace these sales." (¶ 70). Plaintiffs contend that the customer referred to in this disclosure is Rolling Rock, but the replacement sales referred to were company-wide sales. (¶ 70). There was no disclosure of the effect the loss of Rolling Rock would have on Anchor's asset values, such as its manufacturing plant, inventory and equipment at the Connellsville plant. (¶ 70). Plaintiffs contend that this disclosure was materially misleading because it gave investors a false impression about the risks associated with the lost Rolling Rock contract. (¶ 70). Plaintiffs contend that the loss of the Rolling Rock contract ultimately led to the closure of the Connellsville plant, and as such, a contingent liability should have been disclosed in the prospectus. (¶ 70).

Furthermore, Plaintiffs contend that the loss of the Rolling Rock contract was compounded by the loss of the Yuengling Beer account. (¶ 69e). In early 2003, Yuengling Beer decided that, due to quality problems with the bottles from Connellsville, it would not take any more product from that plant. (¶ 69e). Plaintiffs contend that the loss of Yuengling Beer,

combined with the loss of Rolling Rock, marked the elimination of the Connellsville plant's entire customer base that was unique and proximate to Connellsville. (¶ 69e).

### III.  Motion to Dismiss

Defendants now move to dismiss Counts I and II of the second amended complaint. Accordingly, the Court will address each count.

#### A.  Count I: Section 11 Claim

Plaintiffs' Section 11 claim is based on (1) the failure to write down the value of the assets at the Connellsville plant; and (2) the failure to disclose a contingent loss due to the loss of the Rolling Rock contract. Defendants argue that neither basis for the Section 11 claim is properly alleged, and therefore, the entire Section 11 claim should be dismissed. For the reasons stated below, the Court rejects Defendants' arguments.

##### 1.  Asset Impairment

Plaintiffs' Section 11 claim is based, in part, on Anchor's failure to write down the value of the assets at the Connellsville plant in the financial statements incorporated into the prospectus after the loss of the Rolling Rock contract. Plaintiffs contend that this is a violation of GAAP, specifically Statement of Financial Accounting Standards Number 144 ("SFAS 144"). SFAS 144 requires recognition of an impairment loss if the carrying amount of a long-lived asset is not recoverable from its undiscounted future cash flows.

Defendants move to dismiss Plaintiffs' Section 11 claim to the extent that it is based on the failure to write down the value of the assets at the Connellsville plant, because Defendants contend that Plaintiffs have not sufficiently alleged that the undiscounted future cash flows of the assets were not sufficient to cover their carrying values. Specifically, Defendants argue that

Plaintiffs' allegations focus on the *profitability* of the Connellsville plant, rather than on the cash flows that its assets would produce. As such, Defendants argue that the Connellsville plant could have been unprofitable, yet its assets could still have produced undiscounted future cash flows that would have covered their carrying values.

The Court is not persuaded by Defendants' arguments, as it does not appear beyond doubt that Plaintiffs can prove no set of facts in support of their Section 11 claim. Specifically, Plaintiffs alleged that: (1) Anchor lost the Rolling Rock contract on August 8, 2002; (2) the Rolling Rock contract accounted for 50% of the Connellsville plant's production and sales; (3) due to the significant cost of transportation, most of Anchor's customers are located within a 150-mile radius of a plant; (4) after Anchor lost the Rolling Rock contract in 2002, the operations at the Connellsville facility declined precipitously; (5) the Rolling Rock contract required the use of decorating equipment to paint the Rolling Rock bottles, and when Rolling Rock cancelled its contract, the decorating equipment became idle and was no longer utilized as of March 2003; (6) by early 2003, the Connellsville plant lost Yuengling Beer as a customer, which marked the elimination of the entire customer base that was unique and proximate to Connellsville; and (7) by the time of the Offering, more than a year had passed since Anchor found out that it had lost the Rolling Rock contract and Anchor had not yet found replacement customers to make up for the loss of the Rolling Rock contract. Given Plaintiffs' allegations, it does not appear beyond doubt that Plaintiffs will be unable to prove that the undiscounted future cash flows of the assets of the Connellsville plant were not sufficient to cover their carrying values at the time the prospectus was issued. Accordingly, the Court denies Defendants' motion on this issue.

### 2. Disclosure of Contingent Loss

Plaintiffs' Section 11 claim is also based on Anchor's failure to disclose a contingent loss due to the loss of the Rolling Rock contract. Plaintiffs contend that this is a violation of GAAP, specifically Statement of Financial Accounting Standards Number 5 ("SFAS 5").

SFAS 5 provides that disclosure of a contingency must be made when there is at least a reasonable possibility that a loss may have been incurred. (SFAS 5, ¶ 10). SFAS 5 defines "reasonably possible" as meaning that the chance of the future event occurring is more than an a remote or slight chance, but it is less than a likely chance. (SFAS 5, ¶ 3). Thus, disclosure is required for those contingencies for which there is a reasonable possibility that a loss may have been incurred even though information may not indicate that it is likely that an asset has been impaired at the date of the financial statements. (SFAS 5, n.6). If disclosure is required, the disclosure must indicate the nature of the contingency and give an estimate of the possible loss or range of loss, or state that such an estimate cannot be made. (SFAS 5, ¶ 10).

Plaintiffs allege that Anchor violated SFAS 5, because there was no disclosure of the effect the loss of the Rolling Rock contract would have on Anchor's asset values, such as its manufacturing plant, inventory and equipment at the Connellsville plant. Plaintiffs contend that the loss of the Rolling Rock contract ultimately led to the closure of the Connellsville plant, and as such, a contingent liability should have been disclosed in the prospectus.

Defendants move to dismiss Plaintiffs' Section 11 claim to the extent that it is based on the failure to disclose a contingent loss due to the loss of the Rolling Rock contract, because Plaintiffs have not sufficiently alleged facts showing that there was a reasonable possibility that a contingent loss occurred as a result of the loss of the Rolling Rock contract. The Court

disagrees. Given Plaintiffs' allegations, it does not appear beyond doubt that Plaintiffs will be unable to prove that due to the loss of the Rolling Rock contract, there was a reasonable possibility that the assets of the Connellsville plant would become impaired (if they were not impaired already at the time of the prospectus), and/or that due to the loss of the Rolling Rock contract and the loss of the Yuengling Beer account (i.e., the loss of the entire customer base that was unique and proximate to the Connellsville plant), there was a reasonable possibility that the Connellsville plant would not remain open. Accordingly, the Court denies Defendants' motion on this issue.

### B. Count II: Section 15 Control Person Liability Claim

Defendants argue that Plaintiffs' Section 15 control person liability claim should be dismissed, because there is no underlying securities violation under Section 11. However, since this Court has not dismissed Plaintiffs' Section 11 claim, there is an underlying securities violation that can support a Section 15 control person liability claim. Accordingly, the Court denies Defendants' motion on this issue.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss Counts I and II of the Consolidated Second Amended Class Action Complaint (Doc. No. 139) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of July, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

10